### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | INDICTMENT NO. 1:19-CR-10041-JDB |
| | : | |
| CHARLES ALSTON, M.D., ET AL | : | |

## MOTION TO SEVER DEFENDANT(S)

COMES NOW the Defendant, Charles Alston, by and through undersigned counsel and requests this Honorable Court to find that the joinder of Defendant Alston with the co-Defendant in the above styled criminal action is inappropriate under Federal Rule of Criminal Procedure Rule 8(b), or in the alternative, sever Defendant Alston from the above styled criminal action pursuant to Federal Rule of Criminal Procedure Rule 14.

## PROPOSED FINDINGS OF FACT

The single count in the indictment charges the two co-Defendants with a violation of 21 U.S.C. § 841, Conspiracy to Distribute and Dispense Controlled Substances. The count alleges 25 overt acts. The first sixteen acts consist of only a retelling of the Controlled Substances Act and various administrative entities' warnings and guidelines on prescribing controlled substances. The first sixteen acts contain absolutely no information or allegations specific to Defendant Alston (or frankly relevant to the charge in the indictment).

The alleged acts take place over a term of three years (July 2016 – April 2019). Defendant Alston's alleged involvement in any of these acts is based solely on the fact that he served as the co-Defendant's preceptor, a supervision that ended in 2018. The acts enumerated describe only the co-Defendant's conduct, with Defendant Alston being "lumped" in solely on the erroneous assertion stated in act 23, which is that he purported to supervise reviewing *all* of the co-Defendant's patient charts and therefore approved all the prescriptions written. As to these acts, there is no evidence of any kind that applies to Defendant Alston participating in a conspiracy, unlike the bulk of evidence that will be presented against the co-Defendant.

Of the twenty reports of interviews conducted, Defendant Alston's name is mentioned only in four, and never in any way pertaining to alleged wrongdoing. The only evidence that can be gleaned from counsel's investigation is that for a period of two years, Defendant Alston had a working relationship with the co-Defendant to serve as the preceptor to her clinic.

In the single count of the indictment, there is no allegation or explanation of how any of the overt acts alleged amount to Defendant Alston conspiring to distribute and dispense controlled substances not for a legitimate medical purpose and outside the scope of professional practice. No such evidence has been provided through discovery, so it appears that Defendant Alston's name was included to be

simply coupled with the co-Defendant's, in order to suggest a legitimate association.

The government's evidence against Defendant Alston, as compared to the allegations against the co-Defendant is separate and distinct from the evidence necessary to prove the remainder of the indictment. Evidence against Defendant Alston would need to show his knowledge and involvement in the conspiracy to profit from distributing controlled substances. This is distinct from the co-Defendant, as the evidence would have to show her actually distributing controlled substances, according to the government's own explanation of the co-Defendant's alleged relationship within the conspiracy.

Based on the amount of evidence that will be admissible against the co-Defendant as compared to the admissible evidence against Defendant Alston, the jury will be faced with the enormous task of sifting through an inordinate amount of evidence hardly containing a trace of Defendant Alston's name when deliberating his fate.

The joinder of these Defendants in one trial is also fraught with the peril that the jurors' consideration of the accusations against Defendant Alston will be poisoned by the onslaught of evidence introduced as to the activities of the co-Defendant. Prejudicial spill-over will occur and prevent Defendant Alston from receiving a fair trial.

Based on the allegations in the indictment, joinder is fundamentally unfair and contrary to the rules of criminal procedure. The disparity of evidence and the certainty of spill-over and prejudice cries out for severance.

## ARGUMENT AND CITATION TO AUTHORITY

## 1. Joinder of the Co-Defendants Violates Federal Rule of Criminal Procedure Rule 8(b)

Fed.R.Crim.P. 8(b) ("Rule 8(b)") forbids joint trials of Defendants unless the Defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." See also, United States v. Swift, 809 F.2d 320, 322 (6th Cir. 1987).

To determine if the Rule 8(b) requirements are satisfied, the court looks "to the allegations in the indictment to determine whether joinder was proper." United States v. Johnson, 256 F.Supp3d. 763, 767 (6th Cir.2017).

If the co-Defendants are joined but do not satisfy the Rule 8(b) requirements, there is misjoinder as a matter of law. United States v. Chavis, 296 F.3d 450, 456 (6th Cir.2002). Under such circumstances, the "trial judge has no discretion on the question of severance. Severance in such a case is mandatory." United States v. Hatcher, 680 F.2d 438, 440-41 (6th Cir.1982).

In order to determine whether joinder is appropriate under Rule 8, the inquiry is as follows: are the accusations lodged against the moving party of a

series with the acts of co-Defendants being other constituent parts of that series? The fact that one offense follows another does not alone satisfy the test; nor does the fact that similar actors participated in several crimes suffice. United States. v. Levine, 546 F.2d 658 (5th Cir. 1977); King v. United States, 385 F.2d 700, 703 (1st Cir. 1966); United States v. Gentile, 495 F.2d 626 (5th Cir. 1974).[1]

To be a "series", there must be a **substantial nexus** between the acts or transactions. A substantial nexus exists if the transactions are so closely tied that proof of one proves the other:

> While criminal acts of several Defendants may be similar in nature, these acts cannot be properly joined in a multiple Defendant trial of different facts and circumstances [that] must be established to support the alleged violations. But when the facts underlying each offense are so closely connected that proof of such facts is necessary to establish each offense, joinder of Defendants and offenses is proper.

United States v. Gentile, 495 F.2d at 630; United States v. Andrews, 765 F.2d 1491, 1496 (11th Cir. 1985); United States v. Maggitt, 784 F.2d 590, 595 (5th Cir. 1986).

The facts of this case as they relate to misjoinder of counts and Defendants are similar to those of United States. v. Maranghi, 718 F.Supp. 1450 (N.D.Ca.

---

[1] Rule 8 (b) "can, and should be, broadly construed in favor of initial joinder. United States v. Swift, 809 F.2d 320, 322 (6th Cir.1987). "Courts may properly join in an indictment defendants charged with participation in a single conspiracy." United States v. Saleh, 875 F.2d 535, 538 (6th Cir.1989); United States v. Warner, 690 F.2d 545, 551 (6th Cir.1982).

1989). In <u>Maranghi</u>, multiple Defendants were charged with multiple drug related conspiracies in one indictment. In granting the motion for severance, the Court applied what it called the "overlapping evidence" test, which permits joinder under Rule 8(b) "whenever the common activity constitutes a substantial portion of the proof of the joined charges." <u>Maranghi</u> at 1451. This test "suggests a rule of proportionality: For each Defendant, the relevant evidence at trial should exceed the irrelevant." Based upon application of this test, and the lack of evidence to support the connection between the individuals charged in the indictment and the charges of the indictment, severance was granted. <u>Id</u>. In <u>Maranghi</u>, the Court stated:

> The indictment here does no more than identify a series of drug transactions and the dates on which they took place. Nowhere does it explain the connection between an individual transaction and those Defendants not directly charged with it. Because the government has been adamant about trying the Defendants en masse, the Court has given it several opportunities to supplement the indictment with a proffer of evidence.... The case against a Defendant like Ruffa is entirely different.  He is charged with the distribution of approximately one-half gram of cocaine on January 11, 1989. The evidence relevant to that one transaction will be dwarfed by that offered to prove the existence of an international drug conspiracy involving a dozen other Defendants and on untold number of other deals - all irrelevant to the offense with which Ruffa has been actually charged, the <u>only</u> offense the government is willing to prove against him.  The possibility for prejudice by association is enormous. During trial there will be an endless litany of admonitions as to whom each piece of evidence was admitted. The jury would be saddled with the hopeless task of segregating the facts....Again, neither the indictment nor the proffer satisfies the version of the test. The government charges not one but <u>seven</u> conspiracies, and five

> Defendants are not charged in conspiracies at all. There is no reason to believe that each and every Defendant was working toward a common end in which all would share the fruits of their collective labor. The government serves up much rhetoric in the building of an empire, but offered little tangible proof that the Defendants were acting in concert. (Emphasis supplied by Court).

United States v. Maranghi, 718 F.Supp, at 1451 through 1453.[2]

Likewise in the case at bar, the government has simply lumped alleged illegal activity, allegedly committed by the co-Defendant, into a single sensationalized count covering a time period of three years. How the twenty-five overt acts are part of any "pattern" or how they further the alleged conspiracy is unknown. There is no explanation as to how the alleged overt acts were committed by Alston or how it furthered the alleged enterprise.

Further, there has been no proffer by the government showing any link constituting a conspiracy between Defendant Alston and the co-Defendant. There is no reason to believe that the co-Defendant and Alston were working toward a common end in which all would share the fruits of their collective labor. The government has proffered much rhetoric about the administrative and legislative

---

[2] "A defendant must show compelling, specific, and actual prejudice from a court's refusal to grant a motion." United States v. Saadey, 393 F.3d 669, 678 (6th Cir.2005). "There is always a danger that the jury will convict on the basis of the cumulative evidence rather than on the basis of evidence relating to each defendant. However, we adhere to the view, as previously stated by our court, that 'the jury must be presumed to be capable of sorting out the evidence and considering the case of each defendant separately." United States v. Warner, 690 F.2d 545, 553 (6th Cir. 1982).

history of pharmaceuticals coloring the specificities of the conspiracy charge, but offered little tangible proof that the Defendants were acting in concert as mandated under Maranghi. Therefore, this criminal action must be severed in accordance with Rule 8.

Moreover, even if this Honorable Court were to approve the format of the indictment under Rule 8, the discretion afforded the Court under Fed.R.Crim.P. 14 ("Rule 14") to sever Defendants "if it appears that a Defendant... is prejudiced by a joinder" should be exercised in favor of severance.

## 2. Rule 14 Requires Severance To Avoid The Unfair Prejudice Which Would Inevitably Result From A Joint Trial

Rule 14 requires the Court to exercise discretion in granting a severance to avoid unfair prejudice.  Rule 14 recognizes that joinder, even when proper under Rule 8(b), may prejudice either a Defendant or the Government. Thus, Rule 14 provides: "If it appears that a Defendant or the government is prejudiced by a joinder of ... Defendants ... for trial together, the court may order an election or separate trials of counts, grant a severance of Defendants or provide whatever other relief justice requires." Zafiro v. U.S., 506 U.S. 534, 113 S.Ct. 933 (1993).[3]

---

[3] Rule 14 requires the Court to "balance the right of the defendants to a fair trial, absent the prejudice inherent in a joint trial, against the interests of judicial economy and efficiency."  U.S. v. Shankman, 13 F.Supp.2d 1358 (S.D.Ga. 1998) citing *United States v. Hewes,* 729 F.2d 1302, 1318, *reh'g denied,* 734 F.2d 1481 (11th Cir.1984), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985).

The United States Supreme Court in Zafiro went on to say:

> We believe that, when Defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the Defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a Defendant and that would not be admissible if a Defendant were tried alone is admitted against a coDefendant. For example, evidence of a coDefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a Defendant was guilty. When many Defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. *See* Kotteakos v. United States, 328 U.S. 750, 774-775, 66 S.Ct. 1239, 1252-1253, 90 L.Ed. 1557 (1946). Evidence that is probative of a Defendant's guilt but technically admissible only against a coDefendant also might present a risk of prejudice. *See* Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

Zafiro v. U.S., 506 U.S. 534, 113 S.Ct. 933 (1993).

In forming a decision regarding severance, courts have reviewed a number of factors to include: the relative weight of evidence, the nature of the crimes, the length of trial, the likelihood of having to conduct two identical trials, the possibility of confusion, peculiar features of the particular case which bear on the fairness of trying Defendants together. *See generally*, United States v. Branker, 395 F.2d 881, 888 (9th Cir. 1968); United States v. Donaway, 447 F.2d 940 (9th Cir. 1971).

Both sides can claim a strategic advantage if they prevail on the Rule 14 motion -- the government knows that "united they fall" while the Defendants believe that divided they have a chance.

The Court, however, is concerned with fairness, not strategy. "Fairness," in this context, means the Defendant's guilt or innocence will be decided on the basis of the evidence presented against him, not the evidence offered against the gentlemen at the next table.

> The Constitution does not guarantee a trial free from the burdens that inevitably accompany such a trial; rather it requires that the potential for transferability of guilt be minimized to the extent possible in order to 'individualize each Defendant in his relation to the mass.'

United States v. Martino, 648 F.2d 367, 385-86 (5th Cir. 1981).

Defendant Alston being convicted on the basis of evidence presented against his Co-Defendant is real.

> This kind of prejudice is particularly injurious to Defendants who are charged in only a few of the many counts, who were involved in only a small proportion of the evidence, and who are linked with only one or two of their co-Defendants. The jury is subjected to weeks of trial dealing with dozens of incidents of criminal misconduct which do not involve these Defendants in any way. As trial days go by, 'the mounting proof of the guilt of one is likely to affect [one] another.'

United States v. Branker, 395 F.2d 881, 888 (9th Cir. 1968). See also United States v. Donaway, 447 F.2d 940 (9th Cir. 1971).

The facts of the case as they relate to prejudice by a joinder is similar to United States v. Branker, 395 F.2d 881, 888 (9th Cir. 1968). In Branker, taxpayer

Defendants were found to have required separate trials from the two principal Internal Revenue Service employee-Defendants who orchestrated the scheme.[4] Branker at 887. Branker held that there were several key facts that required the four taxpayers to be severed from the IRS employees. First, the four taxpayers were only people the IRS employees dealt with, minimizing their relationship to the scheme and the mountain of evidence pertaining only to the employees. Branker at 882. While the taxpayers had knowledge of the scheme, the court found they were injuriously prejudiced because they were "involved in only a small proportion of the evidence". Branker at 888. Branker found that the trial for the taxpayers was accompanied by a "huge volume" of testimony that did not relate to them, and only to the "manifold criminal activities" of the IRS employees. Id. This closely aligns with the present case in that the amount of evidence that even merely *mentions* Alston is miniscule compared to the substantial volume pertaining to the Co-Defendant. Moreover, nothing in the government's discovery provides any hint of evidence that Alston knew of the co-Defendant's scheme, let alone actively participated and benefitted from it. This is distinct from the taxpayers in Branker, because they all knew and sought out the employees specifically to achieve their fraud. Branker at 884-87. However, like the taxpayers in Branker, Alston had little

---

[4] "The first count charged a conspiracy among all defendants. . . . At the close of the government's case, the trial judge dismissed the conspiracy count." Branker at 882-83. ". . . the conspiracy count provided the only justification for the joinder of the eight defendants." Branker at 889.

connection to the co-Defendant. Alston merely served as a preceptor, and as such only reviewed a small percentage of charts monthly to provide that oversight. The government's discovery has provided no evidence suggesting that Alston's level of oversight was abnormal, or that it speaks to a greater plan to cash in on prescribing unnecessary Schedule II pharmaceuticals. The danger of spillover evidence pertaining to the co-Defendant is obvious and would prove manifestly unfair to Alston if he is not severed from her case because as the trial proceeds "the mounting proof of the guilt of one is likely to affect the other." Branker at 888, quoting Schaffer v. United States, 362 U.S. 511, 523.

### 3. Conclusion

When the mountain of evidence is entered against the co-Defendant, the jury will be faced with the gargantuan task of sifting through an inordinate amount of evidence irrelevant and unrelated to Defendant Alston when deliberating his fate. The jury would be saddled with the hopeless task of segregating the facts. Prejudicial spill-over would occur and the results would be unfair.[5]

Clearly, proceeding in a single trial with these Defendants will be fraught with peril. There can be no doubt that Defendant Alston will be poisoned by the evidence introduced as to the activities of the co-Defendant. Defendant Alston

---

[5] *See generally*, U.S. v. Hatcher, 680 F.2d 438 (6th Cir.1982).

cannot receive a fair trial without a severance. The need for severance to prevent unfair prejudice in this case is manifest.

Respectfully submitted, this the 4th day of June, 2019.

ARORA & LASCALA, LLC

By: **/s/ Manubir S. Aroroa**
MANUBIR S. ARORA
Georgia Bar No. 061641
Attorney for Charles Alston
75 W. Wieuca Road, NE
Atlanta, Georgia 30342
(404) 881-8866

ROBINSON, REAGAN & YOUNG, PLLC

By: **/s/ Worrick G. Robinson, IV**
WORRICK G. ROBINSON, IV
Tennessee Bar No. 015009
Attorney for Charles Alston
446 James Robertson Parkway, Suite 200
Nashville, Tennessee 37219

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESEE
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | INDICTMENT NO. 1:19-CR-10041-JDB |
| | : | |
| CHARLES ALSTON, M.D., ET AL | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June, 2019, I have e-filed a copy of the within and foregoing **Motion to Sever Defendants** regarding the above-styled case, wherein a copy of the same has been electronically forwarded to the following: (a) Judge J. Daniel Breen; (b) Assistant United States Attorneys Jason Knutson and Andrew Pennebaker; and (c) Leslie Ballin (counsel for Defendant Petway).

**/s/ Manubir S. Aroroa**
MANUBIR S. ARORA
Georgia Bar No. 061641
Attorney for Charles Alston
75 W. Wieuca Road, NE
Atlanta, Georgia 30342
(404) 881-8866

**/s/ Worrick G. Robinson, IV**
WORRICK G. ROBINSON, IV
Tennessee Bar No. 015009
Attorney for Charles Alston
446 James Robertson Parkway, Suite 200
Nashville, Tennessee 37219
(615) 726-0900

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESEE
# EASTERN DIVISION

UNITED STATES OF AMERICA        :
                                :
   vs.                          :   INDICTMENT NO. 1:19-CR-10041-JDB
                                :
CHARLES ALSTON, M.D., ET AL     :

## CERTIFICATE OF CONSULTATION

I hereby certify that on the 3rd day of June, 2019, opposing counsel was contact via electronic mail and informed of Defendant's intention of filing the within and foregoing **Motion to Sever Defendants**, and on the 3rd day of June, 2019, counsel for the government notified Defendant of its objection via electronic mail.

**/s/ Manubir S. Aroroa**
MANUBIR S. ARORA
Georgia Bar No. 061641
Attorney for Charles Alston
75 W. Wieuca Road, NE
Atlanta, Georgia 30342
(404) 881-8866


**/s/ Worrick G. Robinson, IV**
WORRICK G. ROBINSON, IV
Tennessee Bar No. 015009
Attorney for Charles Alston
446 James Robertson Parkway, Suite 200
Nashville, Tennessee 37219
(615) 726-0900