IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | CR. NO. <u>19-cr-10041-JBD</u> |
| | ) | |
| vs. | ) | |
| | ) | |
| **BRITNEY PETWAY, and** | ) | |
| **CHARLES ALSTON,** | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT'S OMNIBUS MOTION IN LIMINIE**
_____

The United States, by and though Counsel, respectfully submits this Court to order that Defendants Britney Petway ("Petway") and Charles Alston (together, the "Defendants"), and their counsel, are precluded from mentioning, eliciting from any witness, or attempting to elicit from any witness, information relating to the topics 1-15 below in the presence of the jury without first obtaining permission from the Court.

**1. Any suggestion or accusation that a prosecutor or agent engaged in misconduct.**

Allegations of misconduct should be handled outside the presence of the jury so that the Court can determine whether there is a factual foundation and probative value.

**2. The presence or absence of any particular person on the government's witness list, or the government's choice to call or not call a particular witness.**

There are many reasons why the government will not call every witness on its list, including that the witness may become unavailable, the witness may lack credibility, the

1

testimony may become cumulative, or the government may simply run out of time. A jury could be confused if told that the government listed a particular person on its witness list, but the person does not testify. In addition, although the government, of course, retains its burden of proof, no negative inference – such as speculation about what that witness might have said – is permitted based on the government's decision not to call a witness. *See United States v. Russell*, 142 F.3d 438, *4 (6th Cir. 1998) (reasoning, "[a]n adverse inference such as this is permitted from the failure of a party to call a witness if the witness is (1) peculiarly within the party's power to produce; and (2) if the testimony of that witness would elucidate the transaction . . . . before arguing the adverse inference before a jury, "an advance ruling from the trial court should be sought and obtained.") (quoting *United States v. Blakemore*, 489 F.2d 193, 195 n .4 (6th Cir.1973); *see also United States v. Wilson*, 322 F.3d 353, 363 n.14 (5th Cir. 2003) (quoting *McClanahan v. United States*, 230 F.2d 919, 925 (5th Cir. 1956) ("[I]f the witness is 'equally available' to both parties, any negative inference from one party's failure to call that witness is impermissible."). The Defendants can subpoena any witness available to the government. Thus, the Defendants should be precluded from commenting on or asking the jury to draw any negative inference from the absence of a particular witness.

**3.     Any out-of-court statements made by the Defendant or any other person if offered to prove the truth of the matter asserted.**

Although the government may use a defendant's out of court statements *against* the defendant under Fed. R. Evid. 802, when a defendant offers *his or her own* out-of-court statement, such as an email, letter, or text message, to prove the truth of the matter asserted, the statement is inadmissible hearsay. *See* Fed. R. Evid. 801, 802. Hence, the Defendants should be precluded from introducing their own self-serving hearsay

2

statements through any witness—whether the government's witness or his own witness—as doing so would allow the Defendants to introduce their own statements without being subject to cross-examination.

4. **Disputes over discovery, including the timing of the production of records to the government by witnesses.**

Disputes over discovery are legal issues properly handled outside the presence of the jury.

5. **Which other persons have, or have not, been charged in this or other cases.**

Whether or not another person has been charged in this or other cases is irrelevant to the guilt or innocence of the Defendants who are charged in this case. The Defense should not be permitted to discuss whether other physicians and/or medical professionals were or were not charged. Nor should the Defense be permitted to discuss government charging decisions generally or law enforcement efforts. *See United States v. Re*, 401 F.3d 828 (7th Cir. 2005) ("[t]he government's charging decisions are not proper subjects for cross examination and argument"); *see also* Sixth Circuit Pattern Jury Instruction 8.08 ("Also remember that whether anyone else should be prosecuted and convicted for this crime is not a proper matter for you to consider. The possible guilt of others is no defense to a criminal charge. Your job is to decide if the government has proved this defendant guilty. Do not let the possible guilt of others influence you decision in any way.")

If the defense, over the government's objection, attempts to present argument about whether or not other healthcare professionals have been charged, the government should be permitted to rebut this line of argument, by, *inter alia*, arguing evidence of medical professionals with whom the defendants may be affiliated who have been charged.

3

**6.     Any argument that encourages jurors to ignore the law, not follow this Court's instructions, or otherwise violate their oaths as jurors.**

Jurors must follow the law. In *United States v. Thompson*, the court stated that "the right to make closing argument does not include the right to have counsel make an improper argument encouraging the jury to use its 'de facto power to refuse to apply the law as instructed by the court [and] exercise . . . such power in dereliction of the jury's sworn duty.'" 253 F.3d 700, 2001 WL 498430, at *16 (5th Cir. Apr. 9, 2001) (unpublished) (quoting *United States v. Funches*, 135 F.3d 1405, 1408 (11th Cir. 1998). Other courts have similarly held that court must protect against jury nullification. *See United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997) ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent."); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) ("A trial judge . . . may block defense attorneys' attempts to serenade a jury with the siren song of nullification . . ."). This encompasses any attempt by the defense to invoke the Defendant's age, health, or family needs that is intended to invoke sympathy from the jury. *See, e.g.*, *United States v. Rainone*, No. 09 CR 206, 2013 WL 389004, at *1 (N.D. Ill. Jan. 31, 2013) ("[T]he Court grants the Government's Motion to prohibit Defendant from introducing evidence of jury nullification. This ruling includes evidence or argument regarding [the defendant's] age, health, or family that is intended to invoke sympathy."). Nor should defendants be permitted to offer evidence of a humanitarian motive when there is no other purpose for that evidence but to ask the jury to acquit despite proof of the elements of the crimes beyond a reasonable doubt. *See U.S. v. Duval*, 865 F. Supp. 2d 803, 809 (E.D. Mich. 2012). A jury's decision, especially during the guilt phase of a criminal trial, should be based upon the evidence, and not upon

4

their sympathy for either the defendant or the victim of a particular crime.  *See Byrne v. Butler*, 847 F.2d 1135, 1139-40 (5th Cir. 1988).

**7.     Plea negotiations, plea offers, or the rejection of a plea offer.**

The substance of plea negotiations, plea offers or a rejection of a plea offer is irrelevant.

**8.     Potential punishment or any other consequences that might result from a conviction.**

References to possible punishment would be an impermissible appeal to the jury's sympathy and is irrelevant.  "The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged.  The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict."  *Simmons v. United States*, 512 U.S. 573, 579 (1994).  "Information regarding the consequences of a verdict is therefore irrelevant to the jury's task.  Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion."  *Id.*; *see also* Sixth Circuit Pattern Jury Instruction 8.05 (instructing the jury that "[i]t would violate [their] oaths as jurors to even consider the possible punishment in deciding [their] verdict.").

**9.     Defense counsel's personal opinions of, or relationship with, the Defendants.**

Defense counsel's personal opinions of or relationship with the Defendants is irrelevant and would constitute impermissible testimony on behalf of counsel unless defense counsel takes the stand as a witness.

## 10. The use of interview reports prepared by law enforcement to impeach government witnesses.

In the course of the investigation of this case, law enforcement agents created interview reports that, among other things, summarized interviews conducted with prospective witnesses. Those reports are not the statements of the witnesses – they are the statements of the agent who prepared them. Thus, although the Defendants may ask the witness about topics discussed in the report, if they are not satisfied with the answer, the Defendants may not introduce the contents of the interview reports to impeach an interviewee. The government also requests that this Court preclude the Defendants from publishing the contents of the interview reports to the jury, or otherwise suggesting to the jury that the interview report is a statement of the witness. *See Palermo v. United States*, 360 U.S. 343, 349-52 (1959); *Goldberg v. United States*, 425 U.S. 94, 110 n.19 (1976); *United States v. Merida*, 765 F.2d 1205, 1215 (5th Cir. 1985) (holding that interview reports were not statements of the witness subject to the Jencks Act because they did not contain any "substantially verbatim recital of an oral statement," and were not "signed or otherwise adopted by the witness.").

As a result, courts have also held that such interview reports may not be used to impeach that witness "unless the witness has subscribed to or otherwise adopted the statement as his own." *United States v. Saget*, 991 F.2d 702, 710-11 (11th Cir. 1993); *see also United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness]" it was "properly rejected as a prior inconsistent statement"); *United States v. Hill*, 526 F.2d 1019, 1026 (10th Cir. 1975) (upholding the trial court's decision to "not allow counsel to use the 302 statement to impeach a witness because the witness did not prepare or sign

6

the document and probably never adopted it."). As the Supreme Court emphasized in *Palermo*, it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations." *Palermo*, 360 U.S. at 350.

**11. Specific instances of prior good acts or lack of prior bad acts**

Specific instances of good conduct or good character are irrelevant to the conduct charged in the Indictment. *See, e.g., United States v. Berry*, Case No. 4:06-cr-104, 2007 WL 324027, at *1 (N.D. Miss. Jan. 31, 2007) ("[T]he court does not presently see any reason why [the defendant's] career history or commendations as a physician would be at all pertinent or relevant to the charges in the indictment . . . as a matter of principle, [the defendant's] commendations as a physician bear no relevance to whether or not she committed the crimes of which she is accused since she could be the most competent, skilled physician in the world and still have committed crimes. That is, being a good physician does not demonstrate *ipso facto* that a person is truthful. Therefore, the court concludes that as a preliminary matter, evidence of [the defendant's] commendations as a physician will be excluded unless otherwise shown to be relevant under Fed. R. Evid. 401 and 402 before submission before the jury.").

Whether the Defendant was an otherwise law abiding citizen who never abused his position as a physician is not probative of his conduct in connection with the crimes charged in this case. *See* Fed. R. Evid. 404(a), 405(a); *See United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014) ("For the same reason that prior 'bad acts' may not be used to show predisposition to commit crimes, prior 'good acts' generally may not be used to

7

show predisposition not to commit crimes"); *United States v. Cleveland*, No. 96 CR 207, 1997 WL 253124, at *2 (E.D. La. May 14, 1997) ("A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions."); *United States v. Hill*, 40 F.3d 164, 168-69 (7th Cir. 1994) ("[A] defendant may not produce evidence of specific instances of law-abidingness as part of his defense" in order to show his good character). In other words, there are no circumstances under which the Defendant's prior good acts are relevant to whether he engaged in the criminal conduct charged in this case. Accordingly, specific instances of the Defendant's good conduct should be excluded as irrelevant.

Relatedly, arguments or evidence of a defendant's lack of prior bad acts are inadmissible and should be excluded as well. Rule 405(a); s*ee also United States v. Silber*, 456 Fed. App'x 559, 562 (6th Cir. 2012); *United States v. Barry*, 814 F.2d 1400, 1404 (9th Cir. 1987); *Government of the Virgin Islands v. Grant*, 775 F.2d 508, 510 (3d Cir. 1985) (affirming trial court's order precluding the defendant from testifying about his lack of criminal record). For example, statements referring to a defendant's "unblemished record" or that a defendant "has never received so much as a parking ticket" do not constitute evidence of a pertinent character trait and must be excluded.

**12. Improper character testimony**

Under Rules 404 and 405, a defendant in a criminal case has a limited right to offer character evidence. A defendant may only offer evidence of a "pertinent trait," and ordinarily must limit that proof to "testimony about the person's reputation or by testimony in the form of an opinion." Fed. R. Evid. 404(a)(2)(A); Fed. R. Evid. 405(a). Should the defendant elect to place his character at issue, the United States may respond in two

ways: (1) by cross-examining the defense's character witnesses about specific instances of conduct, Fed. R. Evid. 405(a); and (2) by calling its own character witnesses in rebuttal, Fed. R. Evid. 404(a)(2)(A). *See Michelson v. United States*, 335 U.S. 469, 479 (1948) ("The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit . . . ."); *United States v. McGuire*, 744 F.2d 1197, 1204 (6th Cir. 1984) ("[O]nce the defendant has 'opened the door' by offering evidence as to his good character, the prosecution may rebut that evidence . . . [and] has wide latitude on cross-examination.").

Further, "In the criminal context, a pertinent character trait is one that is relevant to the offense charged." *United States v. John,* 309 F.3d 298, 303 (5th Cir. 2002). Accordingly, courts should not allow defendants to introduce evidence of a character trait that is irrelevant to the offense charged under Rule 404(a). *See, e.g.*, *United States v. Han*, 230 F.3d 560, 564 (3d Cir. 2000) ("[T]he proffered evidence of a character trait [must] relate to some element at issue in the case.").

Traits such as intelligence or generosity are generally *not* to pertinent traits under Rule 404(a)(2)(A). *See, e.g.*, *United States v. Nixon*, 694 F.3d 623, 636 (6th Cir. 2012) ("[T]he term 'character trait' does not encompass a witness's memory or mental capacity."); *United States v. West*, 670 F.2d 675, 682 (7th Cir. 1982) ("We do not believe that intelligence is a character trait within the meaning of the rule."), *overruled on other grounds*.

**13.   Evidence that the Defendants acted with good intentions with respect to Counts 2 through 6.**

A violation of 21 U.S.C. § 841(a)(1) requires the government to prove the defendant acted knowingly or intentionally in issuing prescriptions without legitimate medical purpose or outside the usual course of professional practice. There is no requirement of willfulness – i.e. that the Defendants had malicious intent. Thus, claims or evidence that the Defendants had good intentions in issuing prescriptions to the patients are inadmissible. It is both irrelevant to any charge or defense under Rule 402, and unduly prejudicial under Rule 403 in that it suggests the existence of a "good intentions" defense where there is none. Further, Rule 404 prohibits the admission of evidence of the Defendants' good character.

In *United States v. Godofsky*, --- F.3d. ----, 2019 WL 6315348, at *3 (6th Cir. Nov. 26, 2019), the Sixth Circuit highlighted a critical distinction between a proper good faith defense and an improper "good intentions defense". The court affirmed the trial court's refusal to give an instruction that defined "good faith" to mean "good intentions and an honest exercise of professional judgment as to a patient's medical needs." *Id.* at *2. The court explained that a proper good-faith defense, in this context, would mean "an objective 'good faith' attempt to comply with the law, as measured against the actions of a reasonable doctor under the circumstances, allowing for reasonable mistake or misunderstanding[,] that is, a doctor who 'act[s] in accordance with what he reasonably believed to be proper medical practice.'" *Id.* at *11 (quoting *United States v. Volkman*, 797 F.3d 377, 387 (6th Cir. 2015)). By contrast, a doctor's "personal belief that [certain] prescriptions would benefit his patients" is not relevant and would not form the basis for a defense. *Id.* Put simply, a defendant cannot defend her prescribing decisions on the

10

basis that she "personally believes that such unprofessional and illegitimate actions were nonetheless beneficial" to patients "in an individual case." *Id.* at *10.

Accordingly, the Defendants should not be permitted to suggest—through evidence, questioning, or argument—that they believed they were doing, or tried to do, what was best for the patients. Such evidence cannot provide a defense and would only encourage the jury to decide the case for reasons unrelated to the merits.

**14. The existence or content of the United States' motions and any order of this Court in response to those Motions.**

The existence and content of this motion and other motions filed by the government are irrelevant to the matters to be decided by the jury.

**15. Certain Expert Testimony**

While the government does not object to the defense expert generally, certain topics should be excluded from his testimony, as irrelevant. Moreover, the prejudicial effect of certain anticipated statements outweighs their probative value. The defense expert should not be permitted to testify regarding any other "sting operation" or law enforcement efforts. In addition, the expert should not be able to opine specifically on what Dr. Alston did or did not know. While the expert may provide opinion testimony, his testimony cannot be used to provide Defendant statements, or to provide an opinion on the Defendants' mental state. *See* Fed. R. Evid. 704 ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.").

Respectfully Submitted,

By: _____/s/_____
JILLIAN D. WILLIS
ANN WEBER LANGLEY
Trial Attorneys
United States Department of Justice
Criminal Division, Fraud Section

CERTIFICATE OF SERVICE

On December 27th, 2019, I served a copy of this document by electronically filing it on the Court's electronic filing system.

_____/s/_____
JILLIAN D. WILLIS
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section