IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CR. NO. <u>1:19-cr-10041-JDB-2</u> |
| | ) | |
| vs. | ) | |
| | ) | |
| CHARLES ALSTON, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S SECOND MOTION TO MODIFY CONDITIONS OF RELEASE**
___

The United States hereby opposes Defendant Charles Alston's (the "Defendant's") second Motion to Modify Release Conditions. Alston is charged by superseding indictment with conspiracy to distribute controlled substances outside the scope of professional practice, and not for a legitimate medical purpose and four substantive counts of unlawful distribution. In his second Motion to Modify Release Conditions, Alston, citing Covid-19 as a basis for modification, once again fails to demonstrate why permitting him to prescribe the very drugs he is charged with unlawfully distributing is not a danger to the community. He does not point to any evidence that Covid-19 makes him less likely to abuse his privileges as a physician nor does he even allege that Schedule II controlled substances, benzodiazepines, and Carisoprodol are treatments for Covid-19. To ensure the safety of patients throughout the Western District of Tennessee, the Court should continue to restrict the controlled substances that Alston can prescribe. Accordingly, his motion should be denied.

1

**BACKGROUND**

On April 15, 2019, Charles Alston, along with his co-Defendant Britney Petway, was charged by indictment with one count of Conspiracy to Distribute and Dispense Controlled Substances, in violation of 21 U.S.C. § 846 (Dkt. 3). Alston and Petway were charged by superseding indictment with four additional substantive counts of unlawful distribution of controlled substances, in addition to the conspiracy, in November 2019 (Dkt. 120). Petway entered a guilty plea to the superseding indictment in January 2020 (Dkt. 160).

Defendant Alston initially appeared before the Court on April 17, 2019 (Dkt. 8). The government moved, and argued for, Defendant Alston's detention during a hearing on April 18, 2019; following the detention hearing, he was released subject to pretrial conditions that day (Dkt. 18). Specifically, the Court ordered, *inter alia*, that the Defendant "not supervise any nurse practitioners or mid-level professionals" and prohibited the Defendant "from prescribing Schedule II drug[s] or any benzodiazepine or Carisoprodol" (Dkt. 19 at 2). On June 18, 2019, Defendant Alston filed his first Motion to Modify Conditions of Release, requesting the Court "to modify [his] bond in order to allow him to prescribe medication under the monitoring of pre-trial services" (Dkt. 71). On August 2, 2019, the Court denied Defendant's Motion because Alston "failed to present any new evidence to the Court that would cause it to reconsider [the Magistrate Judge's] conditions of release" and "[b]y restricting [Alston] in dispensing the same drugs he is charged in a conspiracy with Petway with overprescribing, the Court is mitigating any concern that Alston might misuse his privileges" (Dkt. 84).

On April 20, 2020, Alston filed the instant Motion to Modify Conditions of Release,

2

"asking the court to restore his ability to prescribe medication so that he can assist his local hospital and be of service to the community" (Dkt. 169).  In his motion, Alston does not point to any evidence that his prescribing Schedule II controlled substances, benzodiazepines, and Carisoprodol is not a continued danger to the community.

## LEGAL STANDARD

Section 3142 of Title 18 governs release pending trial. Under 18 U.S.C. § 3142(a), "[u]pon the appearance before a judicial officer of a person charged with an offense, the judicial officer shall issue an order" regarding a defendant's pre-trial release or detention. Under § 3142(c), the court may fashion release conditions "subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." Moreover, "[t]he judicial officer may at any time amend the order to impose additional or different conditions of release." *See* 18 U.S.C. § 3142(c)(3).

Pursuant to 18 U.S.C. § 3145 (a)(2), a district court may review a magistrate judge's release order on motion by the defendant. A magistrate judge's release order is reviewed de novo. *See United States v. Miranda*, 2019 WL 1237074, at *2 (E.D. Mich. Mar. 18, 2019) (citing *United States v. Marcrum*, 953 F. Supp. 877, 880 (W.D. Tenn. 2013)); *see also United States v. Romans*, 2000 WL 658042, at *1 (6th Cir. May 9, 2000) (affirming district court that had reviewed the magistrate judge's detention order de novo). Accordingly, the Court must "engage in the same analysis, with the same options . . . as the magistrate judge." *Villegas*, 2011 WL 1135018, at *4 (quoting *United States v. Yamini*, 91 F.Supp.2d 1125, 1129 (S.D. Ohio 2000)) (internal quotation marks omitted).

Under 18 U.S.C. § 3142(g), the Court considers four factors when "determining

whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community": (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. A defendant must be detained pending trial if "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The Bail Act requires detention whenever a defendant is either a flight-risk or a danger to the community. *See id.*; *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985). Moreover, certain crimes carry a presumption of detention; conspiracy to distribute a controlled substance is such a charge. *See* 18 U.S.C. § 3142(e)(2) and (3).

## ARGUMENT

Defendant Alston has provided no evidence that he would not be a danger to the community if he were permitted to prescribe the very controlled substances he is charged with unlawfully distributing.[1]  Since the pandemic began, Courts have noted that Covid-19 alone is not a basis for modification of pretrial conditions; Courts must still consider the factors articulated in 3142(g). *See, e.g., United States v. Porter*, No. 19-20115, 2020 WL 1847988, at *4 (E.D. Mich. Apr. 13, 2020) ("Many other district courts also have recently considered arguments citing the COVID-19 epidemic as a basis for pre-trial

---

[1] To the extent that the Defendant is requesting a de novo review of his conditions of release under § 3145(a)(2), the government maintains its position presented at the detention hearing that Defendant Alston should be detained. The government did not seek review of the Magistrate Judge's Order regarding Alston's release conditions (and is not seeking such a review now). However, if Alston is asking the District Court to consider the defendant's conditions anew, the government maintains its arguments presented in favor of detention.

4

release") (citing, e.g., *United States v. Woods*, 4:19-cr-20112 (E.D. Mich. March 28, 2020) (ECF # 258 at 9) ("the COVID-19 pandemic cannot be the sole basis for releasing a defendant from custody pending trial; the Court must still consider the Section 3142(g) factors."). Here, there is still a presumption of detention, given that Alston is charged with conspiracy to distribute controlled substances and unlawful distribution. *Marcrum*, 953 F. Supp. 2d at 880 ("when the government submits an indictment including charges listed in section 3142(e)(3), it has fulfilled its burden to establish the presumption in favor of detention.") (citation omitted). And, the factors articulated in § 3142(g) continue to weigh against Defendant Alston. Section 3142(g)(1) expressly instructs the court to consider whether a crime involves a controlled substance when considering the nature and circumstances of the offense. The weight of the evidence also weighs against Defendant Alston. Since the detention hearing, the Defendant has been charged with additional counts in a superseding indictment and his Co-Defendant has pled guilty to conspiring with him, while under his supervision, to prescribe the controlled substances at issue outside the scope of professional practice.

Instead of providing evidence of any reduced risk to the community for the Court to consider, Alston baldly asserts that his conditions of release must be modified for him to assist with Covid-19. However, the Defendant's Motion does not establish that he must have full prescribing privileges to help his community with this virus. In fact, the Tennessee Medical Reserve Corps announcement seeking workers requests individuals "*(medical and <u>non-medical</u>) who have been furloughed and are seeking employment*"

5

(emphasis added).[2] And, there is no evidence in Alston's Motion that Schedule II controlled substances, such as oxycodone, and benzodiazepines, and Carisoprodol, are drugs necessary to treat Covid-19. Moreover, if physicians are in short supply, it seems that the Defendant could request a waiver from the hospital that would permit him to practice medicine without requiring him to be able to prescribe the specific drugs that he is charged with unlawfully distributing in this matter. Indeed, prescribing controlled substances is hardly an essential part of being a doctor. Many physicians across disciplines practice medicine every day without the special DEA registration that is required in order to prescribe controlled substances. In short, requesting retired or furloughed medical professionals to staff virus surge centers is a far cry from requesting that federally indicted physicians be permitted to prescribe opioids despite a Court's previous finding that this could present a danger to the community.

Prohibiting the Defendant from prescribing Schedule II narcotics and two specific drugs remains the least restrictive means to ensure the safety of the community, where Defendant Alston previously abused his privileges as a physician.[3] As indicated above, the Defendant is not restricted from assisting with Covid-19 – he does not need a modification in release conditions to achieve his stated goal of helping his community during the pandemic. The release order in this case does not prevent Dr. Alston from volunteering in a non-medical capacity or even practicing medicine. Indeed, he can even prescribe other controlled substances; he is only restricted from prescribing the drugs

---

[2] *See* https://www.tn.gov/health/cedep/cedep-emergency-preparedness/volunteer-mobilizer.html

[3] Courts have previously restricted physicians' ability to prescribe controlled substances as part of release conditions. *See, e.g., United States v. Fata*, 2013 WL 4084765, at *4 (E.D. Mich. Aug. 13, 2013) (defendant charged with health care fraud precluded from prescribing as part of conditions of release).

specifically involved in the crime with which he has been federally indicted – Schedule II narcotics, and other drugs involved in the "holy trinity" (benzodiazepines and Carisoprodol).

Finally, as a practical matter, Alston once again has not addressed the difficulties of having pre-trial services monitor his prescription practices (especially during the Covid-19 pandemic), including how the court would be able keep track of whether he was prescribing within the scope of professional practice and for a legitimate medical purpose.

Because there is not a basis to modify the Defendant's release conditions, Defendant's Motion Should be DENIED.

                                      Respectfully submitted,

                                      D. MICHAEL DUNAVANT
                                      United States Attorney

By:      */s/ Jillian Willis*
           JILLIAN D. WILLIS
           ANN LANGLEY
           Trial Attorneys
           United States Department of Justice
           Criminal Division, Fraud Section

## **CERTIFICATE OF SERVICE**

I, Jillian Willis, Trial Attorney in the United States Department of Justice, Criminal Division, hereby certify that a copy of the foregoing pleading was forwarded by electronic means via the court's electronic filing system to counsel for the defendant.

THIS the 27th day of April, 2020.

                                                  _/s/ Jillian Willis_
                                                JILLIAN D. WILLIS
                                                Trial Attorney
                                                United States Department of Justice
                                                Criminal Division, Fraud Section